IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**CARLOS OLIVERAS-GONZALEZ [2],**<br><br>Defendant. | **CR. NO. 05-235 (CCC)** |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### RE: MOTION TO DISMISS THE INDICTMENT

The superseding indictment (Docket No. 132) in this case charges defendant Carlos Oliveras-González ("Oliveras"), and others, with various drug trafficking offenses under 21 U.S.C. §§ 841 and 846, and related firearms offenses under 18 U.S.C. §924(c). Before the court are Oliveras's motion to dismiss the indictment on double jeopardy grounds (Docket No. 559) and the government's opposition. (Docket No. 561). This matter was referred to me for a report and recommendation by the presiding district judge. (Docket No. 563, 567). For the reasons that follow, I recommend that defendant's motion be **denied**.

### BACKGROUND

Trial by jury in this case began on August 4, 2010. On that day, the court impaneled and swore in a jury of twelve jurors and two alternates, and heard the testimony of one witness. (Docket No. 526, 530).

The second day of trial did not go as smoothly. That morning, a daily newspaper in Puerto Rico published an article about the case, stating that Oliveras had been convicted and sentenced at

United States v. Carlos Oliveras-González [2]                                                                    Page 2
Cr. 05-235 (CCC)
REPORT AND RECOMMENDATION

a previous trial, that his conviction had been overturned, and that codefendants had pled guilty. This prompted the defense to move the court to poll the jurors individually as to whether they had been tainted by the article. (Docket No. 529). The court granted defendant's request and proceeded to poll the jurors in chambers one-by-one as to whether they had read the newspaper article. (Docket No. 231). This process soon revealed that, contrary to the court's instructions, Juror Number 18 had read the article and had discussed it with other jurors. The defendant requested that Juror Number 18 be dismissed, and the court granted this request. (Docket No. 561-1, p. 40, 44).

The court also questioned Juror Number 7 and discovered that he had heard about the article. It was further revealed that Juror Number 7 suffered from hearing problems and that he had not heard parts of the testimony and court proceedings the previous day. The defendant moved to dismiss Juror Number 7, and the court granted this request. (Docket No. 561-1, p. 68-78, 82; Docket No. 531).

At that point, the court and parties were still left with twelve jurors. However, the court subsequently questioned Juror Number 25. Although Juror Number 25 did not appear to be tainted by the newspaper article, this juror repeatedly stated that, after hearing the evidence the government had presented thus far in the case, she believed that the defendant was required to prove his innocense. (Docket No. 561-1, p. 118-21). This prompted the defense to move for Juror Number 25's disqualification (Docket No. 561-1, p. 121), which the court granted, based on the juror's apparent inability to follow the court's instructions that the government at all stages had the burden to prove the defendant's guilt beyond a reasonable doubt and that the defendant was not required to prove his innocense. (Docket No. 561-1, p. 122).

With the disqualification of Juror Number 25, only eleven jurors remained. The court therefore asked the parties if they would stipulate to continuing the case with fewer than twelve jurors, to which defendant's counsel replied, "The answer is no, Judge. I have discussed that with my client and there is no stipulation." (Docket No. 561-1, p. 127). The court then informed that the jury would have to be discharged and the case will have to start over with another jury. The court then discussed with counsel the need to ensure that the new jurors would understand the fundamental rights of a person accused of a crime, to which defendant's counsel responded, "Definitely." The judge then brought the jury into the courtroom and informed that the jury would be discharged. The defense made no objection to the discharge of the jury either in chambers or in open court. Finally, the court asked if the parties objected to discharging the jury in the jury room, and defendant's counsel said she did not object.   (Docket No. 561-1, p. 127-29).

## DISCUSSION

Oliveras moves to dismiss the indictment on the grounds that retrial with a new jury would violate the Double Jeopardy Clause, which provides that no person will "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause bars a second prosecution for the same offence only if jeopardy attached in the first proceeding. Jeopardy attaches in a jury trial when the jury is impaneled and sworn. United States v. Pierce, 60 F.3d 886, 889 (1st Cir. 1995).

When the original proceeding ends in a mistrial, the Double Jeopardy Clause does not bar retrial if, taking all the circumstances into consideration, there is manifest necessity for declaring the mistrial. United States v. Brown, 426 F.3d 32, 37-38 (1st Cir. 2005). In considering the need to declare a mistrial, the court must explore viable alternatives to a mistrial. Id.; United States v.

Toribio-Lugo, 376 F.3d 333, 39 (1st Cir. 2004). "Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3.

Even in the absence of manifest necessity, when a mistrial is granted at the defendant's request, the Double Jeopardy Clause precludes retrial only if the government has acted in bad faith in provoking the defense into requesting the mistrial. United States v. Dinitz, 424 U.S. 600, 611-12 (1976). Moreover, the Double Jeopardy Clause does not bar retrial when the defendant fails to object to a mistrial despite ample opportunity to do so. United States v. McIntosh, 380 F.3d 548, 554-55 (1st Cir. 2004) (consent to mistrial implied when defendant failed to object to declaration of mistrial); United States v. DiPietro, 936 F.2d 6, 11 (1st Cir. 1991).

In this case, the court, by discharging the jury, effectively declared a mistrial in the original proceeding. Moreover, the defense did not specifically request a mistrial or the discharge of the jury. Therefore, under the scenario before the court, the Double Jeopardy Clause permits retrial on the same charges only if: (1) there was manifest necessity for declaring a mistrial, taking all the circumstances into account; Brown, 426 F.3d at 27-28; or (2) the defendant consented to the mistrial. McIntosh, 380 F.3d at 554-55. After careful consideration, I find that both of these circumstances were present in this case.

First, the mistrial resulted from manifest necessity. The incident regarding the newspaper article, and the consequent polling of the jury, resulted in the disqualification of three jurors at the defendant's request. Since the original jury contained fourteen members (twelve jurors and two alternates), the available number of jurors fell below the required twelve. See Fed. R. Crim. P. 23(b)(1). The court then proceeded to consider a practical alternative to a mistrial: proceeding with

eleven jurors by agreement of the parties. See Fed. R. Crim. P. 23(b)(2)(A). The court specifically asked if the parties would stipulate to proceeding with eleven jurors, to which the defense replied, "The answer is no, Judge. I have discussed that with my client and there is no stipulation." (Docket No. 561-1, p. 127). The court's exploration of proceeding with eleven jurors, and the defendant's clear rejection of that alternative, stand in stark contrast to the facts of Toribio-Lugo, where the First Circuit found no manifest necessity for mistrial after the defendant merely expressed a preference to wait for a missing juror rather than to proceed with eleven. 376 F.3d at 38-39.

Oliveras, nevertheless, argues that the court failed to consider two other possible alternatives to mistrial, namely continuing the trial before the judge without a jury or impaneling an additional juror. Importantly, however, the defendant failed to suggest either of these alternatives to the court at any time before the jury was discharged. As the First Circuit has noted, "'Judges are not expected to be mind readers. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" McIntosh, 380 F.3d at 555, *quoting* United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, there is nothing in the record to suggest that either of these after-the-fact suggestions would have been acceptable to the defense. In fact, the defendant's request to disqualify Juror Number 7 because he did not hear parts of the first day's testimony strongly suggests that the defendant would not have been amenable to one of his after-the-fact suggestions, namely, the impaneling of additional jurors who would have missed the entirety of the first day's testimony. In short, the totality of the circumstances dictate that the mistrial was declared due to manifest necessity and after the court adequately considered the clear practical alternative of proceeding with eleven jurors.

The record also reveals that the defendant, through counsel, consented to the discharge of the

jury. While meeting with the attorneys in chambers, and after the defense counsel informed that the defendant would not consent to proceeding with eleven jurors, the court stated its intention to discharge the jury and start again with a new jury. The court further suggested that the court and counsel meet to discuss ways in which to ensure that the next jury would better understand fundamental principles regarding the rights of the accused. The defendant's attorney did not voice any objection to the court's intent to discharge the jury and to start over with a new jury, and affirmatively agreed with ("Definitely") with the court's suggestions regarding the new jury. The court went on to discuss with counsel when the retrial would start, with the defendant's counsel suggesting, "Monday at 10, remember I have my 9:00 [commitment]." The judge and the attorneys then went into the courtroom, whereupon the court informed the jury that it would be discharged because there were fewer than twelve jurors. Again, the defendant voiced no objection. Finally, the judge asked if there was any objection that the actual discharge of the jurors take place in the jury room, and defendant's counsel replied, "Defense has none, Your Honor." (Docket No. 561-1, p. 127-29).

All of these circumstances evince that the defendant either expressly, or at least impliedly, consented to the discharge of the jury. In DiPietro, the First Circuit found that the very similar behavior from defense counsel constituted consent to a mistrial:

> But defense counsel did not object. For several minutes after the decision was announced, she and the government counsel and the trial judge remained in the courtroom. She listened to the court's record explanation for the reason for a mistrial and did not object. She formulated and stated a motion for judgment of acquittal and did not object to the mistrial. Finally, she consulted her calendar and discussed with the court and government counsel acceptable dates for a new trial, and scheduled the trial. But she did not object to the mistrial.

936 F.2d at 11. Here, the defense had ample opportunity to object, both in chambers and in open court, to the court's stated intention to discharge the jury. The failure to do so, given the circumstances on record, constitutes consent to the granting of a mistrial. McIntosh, 380 F.3d at 555 ("To preserve his or her double jeopardy rights, a criminal defendant must object to a mistrial at the time the mistrial is declared."). Accordingly, I recommend that the motion to dismiss on double jeopardy grounds be denied.

## CONCLUSION

For the foregoing reasons, I recommend that defendant Oliveras's motion to dismiss the indictment be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) business days. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 25th of February, 2011.

                                        *S/Bruce J. McGiverin*
                                        BRUCE J. McGIVERIN
                                        United States Magistrate Judge