IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>1) OMAR MARRERO-CRUZ<br>(Counts 1, 2, 3, 4, 5, 6, 7 and 8)<br>2) **CARLOS OLIVERAS-GONZALEZ**<br>(Counts 1, 2, 3, 4, 5, 6, 7 and 8)<br>3) SAMUEL BRISTOL-MARTIR<br>(Counts 1, 6, 7, 8, 9, 10)<br>4) ALVIN FLORES-BOSQUEZ<br>(Counts 1, 6, 7, and 8)<br>5) FRANCISCO SANTIAGO-ALBINO<br>(Counts 1, 9 and 10)<br>6) JAMILL AGUILA-BARRIOS<br>(Counts 1, 2, 3, 4, 5, 6, 7 and 8)<br>Defendants | CRIMINAL 05-0235CCC |

# O R D E R

Defendant Carlos Oliveras-González filed a Motion to Dismiss Indictment on Double Jeopardy Grounds on November 15, 2010 (**docket entry 559**). In support thereof, defendant claims that as a mistrial was declared in this case allegedly without manifest necessity and without his express or implied consent, double jeopardy has attached and he may not be retried again. The United States opposed defendant's motion on November 29, 2011 (docket entry 561), averring that defendant had waived the defense of double jeopardy by what it understands was his express consent to the mistrial declared by the Court. The matter was referred to U.S. Magistrate Judge Bruce J. McGiverin for a report and recommendation on December 14, 2010 (docket entry 563), who issued the same on February 25, 2011 (**docket entry 571**). In it, the Magistrate Judge concluded both that there was manifest necessity for declaring a mistrial in light of the circumstances present in this case and that defendant had also consented to said mistrial. Hence, he recommended that defendant's dismissal motion be denied.

Defendant then raised objections to the Report and Recommendation on March 17, 2011 (docket entry 572), essentially reiterating his arguments in support of the dismissal requested. The United States replied on March 22, 2011 (docket entry 576), also restating its reasons against a finding that double jeopardy has attached.

The Double Jeopardy Clause provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "A defendant may waive his right to avoid double jeopardy by consenting to a mistrial; ordinarily, the prosecution may then proceed with a new trial.  However, when a mistrial is declared without the defendant's consent, the permissibility of a new trial depends upon the 'manifest necessity' for the mistrial declaration." United States v. Lara-Ramírez, 519 F.3d 76, 82 (1st Cir. 2008) (internal citations omitted).  Consent by the defendant to a mistrial may be express, or "implied from a defendant's acts or failure to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so." Lara-Ramírez, 519 F.3d at 83 (quoting United States v. Toribio-Lugo, 376 F.3d 33, 40 (1st Cir. 2004). ""[I]n the usual case, counsel must formalize his or her lack of consent with an on the record objection setting forth reasons for the objection." Id.  See also United States v. McIntosh, 380 F.3d 548, 555 (1st Cir. 2004) ("[t]o preserve his or her double jeopardy rights, a criminal defendant must object to a mistrial at the time the mistrial is declared.")

The Court has reviewed the transcript of the proceedings conducted in chambers and in open court on August 5, 2010 (docket entry 544).  The parties and the Magistrate Judge have aptly summarized the facts that lead to the present quandary, so suffice to say here as relevant background that the Court had no alternative but to disqualify, after defendant so requested, three jurors out of the fourteen empaneled to serve in defendant's trial leaving the jury panel composed by only eleven.  Being one short of the twelve-member jury in a criminal case required by Fed.R.Crim.P. 23(b)(1), the Court inquired from the parties if they would stipulate to proceed with fewer than twelve as allowed by Fed.R.Crim.P. 23(b)(2). The transcript reflects that the following exchange ensued:

> THE COURT: I would like to know if there would be a stipulation to less than 12 jurors, and if not –
>
> MS. LIZARRIBAR: The answer is no, Judge.  I have discussed that with my client and there is no stipulation.
>
> THE COURT: Well, then this jury has to be discharged, and I will set the case to start over again with a new jury.  I think that it's in the best interest of all of us that we meet and discuss certain principles, such as presumption of innocence, burden of proof, that should be addressed individually with these jurors.
>
> MS. LIZARRIBAR: I mentioned that to counsel, and he agreed that should be done.
>
> MR. LOPEZ: You mean for the next voir dire?

THE COURT: Yes, for the next selection of the jury. It's really the best way that we can guarantee that we have jurors there who understand the fundamental principles and rights of a person who is criminally accused and that we can proceed with a trial that has full integrity from the members of the jury up.

MS. LIZARRIBAR: Definitely.

THE COURT: So we are all tired now and I think maybe perhaps we can meet tomorrow, and I will discuss with you which principles you think that the jury should be voir dired individually on and whether that should be on special voir dire or, you know, after the general voir dire of the questions, that are basic questions that are made, and to make the individualized voir dire to the special voir dire panel. But we can discuss all of that tomorrow. So I will meet with you tomorrow here, at 10 in the morning, in the courtroom.

MR. LOPEZ: Your Honor, if I may, just one last question. I have an agent, the undercover agent in this case is now working at the embassy in Mexico City and he just got in. Do you have any idea when we would be starting?

THE COURT: We can start Monday.

MS. LIZARRIBAR: Monday at 10, remember I have my 9:00.

THE COURT: We can start Monday at 10.

MS. LIZARRIBAR: Thank you, Judge.

THE COURT: Let us go the courtroom so I can discharge the jury.

(Proceedings held in open court)

THE COURT: After having had the long individualized voir dire in chambers and having – and since the jury has fallen to less than the 12 jurors and there is no stipulation as to jury of less than 12, the parties know, as already stated in chambers, that the jury will be discharged. Is there any objection that the jury be discharged in the jury room?

MS. LIZARRIBAR: Defense has none, Your Honor.

THE COURT: The United States.

MR. LOPEZ: Under the circumstances, there is none.

THE COURT: So we will meet tomorrow at 10.

MS. LIZARRIBAR: Very well, Your Honor, thank you. Have a good evening, Judge.

THE COURT: Good evening.

As revealed by the transcript, the Court first announced its decision to discharge the jury and declare a mistrial in chambers once defendant's counsel communicated to it that she would not stipulate to a jury of less than twelve members. No objections were then raised by her to said decision, but instead counsel agreed with the Court's suggestion that before the new jury was selected a meeting be held to identify principles of law on which the

potential jurors should be individually voir dired.  When the government's attorney inquired when the new trial would be starting, the Court proposed the following Monday and defense counsel only requested that it be at 10:00 A.M. as she already had a matter set for 9:00 A.M. Again, no objection to the mistrial was then raised.  The Court then instructed the attorneys to go to the courtroom so that the jury could be formally discharged, and no objections were raised at that point either.  Once back in the courtroom, the Court publicly announced its decision to discharge the jury and specifically asked if there were objections that it be discharged in the jury room.  Defendant's counsel expressly indicated that she had no objection that the jury be discharged in the jury room, which necessarily entailed having no objection at all to the overall discharge of the jury.  The Court then adjourned.

Not once during the period that elapsed after the Court announced its decision to dissolve the jury in chambers, but before it was actually discharged after proceedings were held in court, did defendant here urge specific alternatives to the mistrial which would have served to give notice to the court that he actually opposed the mistrial declaration, despite having ample opportunities to object.  Rather, as the transcript of the in-chambers and in-court proceedings reveal, all indications were that defendant acquiesced to the mistrial. The factual scenario of this case is, thus, akin to that confronted by the Court of Appeals in United States v. DiPietro, 936 F.2d. 6, 11 (1st Cir. 1991), where defense counsel never offered any alternatives to a mistrial either even though the judge and the prosecutor remained in the courtroom for several minutes following the mistrial declaration, and she in fact consulted her calendar and discussed acceptable dates for a new trial.  Here, as in DiPietro, defendant's counsel never gave a hint that she objected to the mistrial declaration but, quite to the contrary, all her actions indicated that she was in agreement with the Court's determination to discharge the jury and abort the trial for the reasons explained on the record.  Thus, given the totality of the circumstances present here, we have little trouble concluding that defendant consented to the mistrial ordered by the Court.  That being the case, we need not address whether there was a "manifest necessity" for the mistrial. DiPietro, 936 F.2d at 9.

Accordingly, and for the reasons stated, the Magistrate Judge's Report and Recommendation (**docket entry 571**) is APPROVED and ADOPTED.  Consonant with

CRIMINAL 05-0235CCC                           5

said recommendation, defendant's Motion to Dismiss Indictment on Double Jeopardy Grounds (**docket entry 559**) is DENIED.  Defendant shall be retried at a date to be set by separate Order.

    SO ORDERED.

    At San Juan, Puerto Rico, on May 13, 2011.


                                          S/CARMEN CONSUELO CEREZO
                                          United States District Judge